STYLES *v.* VILLAGE OF DECATUR.

1. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALKS—NOTICE—EVIDENCE.

In an action against a village for injuries caused by the tipping of a loose board in a sidewalk, attributed by plaintiff to the rotten condition of the stringers, evidence as to the general condition of the walk in the vicinity of the place of the accident is admissible.

2. SAME—REPAIRS.

The fact that repairs were made to the walk shortly before the accident does not exclude an inquiry as to its previous condition, where there is room for the jury to find that the walk was not thereby rendered reasonably safe and fit for travel.

3. SAME—SECTION OF STRINGER.

A piece of a stringer taken from the walk in close proximity to the place of the accident, but not at the exact spot, is competent evidence to show the condition of the walk.

4. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

The fact that plaintiff knew that the boards in the walk were so loose as to rattle when walked on does not conclusively establish her negligence in attempting to pass over it.

5. SAME—INSTRUCTIONS.

Where there is testimony tending to show that the accident occurred after dark, it is not error to instruct the jury that it was the duty of the village to keep its sidewalks in a condition reasonably safe and fit for travel by night as well as by day.

6. SAME—WITNESSES—INTEREST.

In an action against a village, it is within the discretion of the court to permit a witness for defendant to be cross-examined with reference to his interest as a taxpayer.

7. TRIAL—EVIDENCE—OPINION OF WITNESS.

A reversal will not be granted because a witness volunteered an opinion, where he was at once admonished by counsel that the answer was improper, and immediately testified to the facts.

8. SAME—DEPOSITIONS.

Error will not lie on the admission of a deposition to which no exception was taken.

9. SAME.

Where a deposition was taken under a stipulation that it should be used only in case the witness should be unable to attend court, and she made affidavit that she was physically unable to attend, stating her condition and ailments, which showing was not contradicted except by the unsworn statements of counsel, it was not error to permit the deposition to be read.

10. SAME—HYPOTHETICAL QUESTIONS.

An objection to a hypothetical question on the ground that it assumes facts not proved, to be available on error, should point out the facts assumed.

11. SAME—REQUESTS TO CHARGE.

The refusal of requests to charge is not error where they are fully covered by the general charge.

12. PERSONAL INJURIES—DAMAGES—QUESTION FOR JURY.

In an action for personal injuries, the question of the extent

of plaintiff's injury is for the jury, on conflicting testimony, though her physician testifies that her injury is trivial.

13. SAME.

Plaintiff in such action may recover what is reasonably compensatory, including the services of a nurse who has made no charge.

14. SAME.

Fright and suspense may be inferred from circumstances, and treated as an element of damage.

15. SAME—EVIDENCE—RES GESTÆ.

Statements made by plaintiff immediately after the injury, to the effect that she must not be touched, and would have to straighten herself up little by little, are admissible as part of the *res gestæ*.

Error to Van Buren; Carr, J. Submitted June 5, 1902. (Docket No. 20.) Decided September 17, 1902.

Case by Adelphia A. Styles against the village of Decatur for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*A. L. Moulton* and *Dallas Boudeman*, for appellant.

*David Anderson*, for appellee.

HOOKER, C. J. The plaintiff, a married woman, recovered a verdict and judgment of $750 against the defendant village by way of recompense for an injury suffered through a fall occasioned by a loose board in a sidewalk. The defendant has appealed. The accident is said to have happened in the evening after dark. She was walking with two of her children, when she was tripped by the board, which flew up in front of her as one of the children stepped upon its end, outside of the stringer. There was evidence tending to show that the walk was old, and that the boards had been loose for a long time. The plaintiff testified that she knew that the boards in the walk were accustomed to rattle as they were walked upon.

Several witnesses were examined, and testified in relation to the walk, and error is alleged upon the ground

that this testimony was not confined to the place of the accident, and that it was not properly restricted in point of time.   The accident happened near an alley, and the testimony referred to a board walk in front of a lot owned by McKay, upon which the woman fell.   It was plaintiff's theory that the stringers were rotten, and did not hold nails well, and it was competent to show the general character and condition of that walk.   *Campbell* v. *City of Kalamazoo*, 80 Mich. 660 (45 N. W. 652); *O'Neil* v. *Village of West Branch*, 81 Mich. 546 (45 N. W. 1023); *Fuller* v. *City of Jackson*, 92 Mich. 205 (52 N. W. 1075); *Grattan* v. *Village of Williamston*, 116 Mich. 463 (74 N. W. 668).

Witness Congdon was asked to state the condition of the walk, and replied that he did not think it good.   He proceeded to describe it.   Mrs. Clifton answered a similar question by saying that it appeared to be in bad condition. Plaintiff's counsel at once admonished her that her answer was not proper, and asked her to state the shape that it was in.   Both questions were objected to when asked, and an exception was taken to the answer given by Mrs. Clifton.   It is obvious that, if the witnesses gave opinions of the condition of the walk, they were not asked to do so, and counsel could not well have prevented it.   It was corrected at once, and should not be made a ground for a reversal of the case.

One Gillum testified that he repaired the walk a short time before the accident, and it is insisted that this made testimony regarding its previous condition immaterial. He was called by the plaintiff, and testified that he was street commissioner; that he found this walk in front of McKay's premises in bad condition, the stringers gone,— rotted out; that he could not nail through and get the boards to stay down; that he reported that condition to the council; and that he was directed to take stuff and patch it up.   He visited the place and nailed the board in. The stringer was so that it wouldn't hold the nails; and he said that he "kind of toe-nailed them crossways to the other

boards." That the council had notice of the defective con-
dition of this walk, if Gillum's testimony is true, admits
of no doubt.    Their duty was then to put it in a condition
reasonably safe and fit for travel.    That duty was not dis-
charged by sending a man to repair it.    It was therefore
for the jury to determine whether the repairs made by
Gillum were such as to render the walk reasonably safe
and fit for travel.    Counsel beg the question when they
ask us to assume that Gillum's repairs were adequate
because his statement that he made repairs is not directly
contradicted.

We think no error was committed in admitting the
depositions.    No exceptions were taken to one, and the
condition upon which the other was to be read was com-
plied with.    There was *prima facie* proof that the wit-
ness could not attend court, and no attempt was made to
contradict it, except by the unsworn statement of counsel.

The hypothetical question objected to is not open to the
objection made, as there was testimony which warranted
it.    Moreover, the objection, when made, was very gen-
eral, and did not point out what facts were assumed by
the question.

A piece of wood was offered upon the claim that it was
a part of the stringer of the walk.    It was not claimed
that it came from the exact spot where the accident
occurred, but that it was a part of the stringer in imme-
diate proximity.    It was said to have been taken from the
walk after it had been taken up.    We think the testimony
was competent.

It is unnecessary to discuss the questions raised upon
the testimony of witnesses Potts and Shockley, further
than to say that, if the questions asked the former were
improper, they elicited no harmful testimony, and it was
within the discretion of the circuit judge to permit ques-
tions tending to show Shockley's interest as a taxpayer.

A number of errors assigned relate to the charge.
Counsel asked that the jury be instructed that the plaintiff
was guilty of contributory negligence and could not re-

cover. We think that this was a question for the jury. A way might be in condition which would justify a court in saying that it was negligent to attempt to walk upon it; but that cannot be said of all highways that are out of repair, or that are not reasonably safe and fit for travel. They afford the only avenue for locomotion from place to place, and the exigencies of life are such that persons may go upon highways, though not in perfect condition, using reasonable prudence and care under the circumstances. Usually these questions are for the jury, as it was in this case. *Mackie v. City of West Bay City*, 106 Mich. 242 (64 N. W. 25); *Lowell v. Township of Watertown*, 58 Mich. 568 (25 N. W. 517). Other cases are also cited by counsel.[1]

It was proper to leave the question of the extent of the plaintiff's injury to the jury, although the physician called to see her did testify that her injury was trivial.

We think the court did not err in refusing to give the requests of counsel. Some of them have been covered by what has been said, and of others it is sufficient to say that the charge as given covered their substance.

We think it was competent for the jury to award damages for plaintiff's expenditures in and about her sickness, and she was under no obligation to this defendant not to compensate her nurse merely because she had made no charge, and she is not compelled to lose her damages of any kind merely because she does not prove the amount with mathematical precision and certainty. The circumstances being laid before the jury, they ascertain the amount that it is reasonable to believe will be compensatory.

---

[1] Viz.: *Dundas v. City of Lansing*, 75 Mich. 499 (42 N. W. 1011, 13 Am. St. Rep. 457); *Fuller v. City of Jackson*, 82 Mich. 480 (46 N. W. 721); *Argus v. Village of Sturgis*, 86 Mich. 344 (48 N.W. 1085); *McGrail v. City of Kalamazoo*, 94 Mich. 52 (53 N. W. 955); *Graves v. City of Battle Creek*, 95 Mich. 266 (54 N. W. 757, 35 Am. St. Rep. 561); *Sias v. Village of Reed City*, 103 Mich. 312 (61 N. W. 502); *Germaine v. City of Muskegon*, 105 Mich. 213 (63 N. W. 78); *Schwingschlegl v. City of Monroe*, 113 Mich. 683 (72 N. W. 7); *Grattan v. Village of Williamston*, 116 Mich. 462 (74 N. W. 668); *Urtel v. City of Flint*, 122 Mich. 65 (80 N. W. 991).

The court said to the jury that "fright and suspense may be treated as elements of damage." If there was no direct proof of fear as to the consequences, and suspense, they are readily inferable from the circumstances, and it was not error to leave these questions to the jury.

The statement of the plaintiff immediately after her fall was properly treated as a part of the *res gestæ;* and, if this accident happened after dark, there was no error in stating to the jury that it is the duty of the village to keep its sidewalks in a condition reasonably safe and fit for travel by night as well as by day. There is proof that the accident occurred after 5 o'clock on the evening of December 19th, and that it was after dark. It was therefore proper to instruct the jury upon that theory.

The motion for new trial was passed upon by the circuit judge, and we think his order denying it should not be disturbed.

The judgment is affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred.